## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TROY WILSON,<br><br>    Plaintiff,<br><br>  v.<br><br>TPK, INC.,<br><br>    Defendant. | Civil Action No.:_____<br><br><br>**JURY TRIAL DEMANDED**<br><br>***Electronically Filed*** |

### COMPLAINT

Plaintiff, Troy Wilson, ("Plaintiff"), through its undersigned counsel, alleges the following as its Complaint against TPK, Inc. ("Defendant")

### JURISDICTION AND VENUE

1. This Complaint alleges patent infringement under the Patent Act, 35 U.S.C. § 271, *et seq.*

2. This Court has subject matter jurisdiction for patent claims pursuant to 28 U.S.C. §§ 1331 and 1338.

3. This Court has personal jurisdiction over the Defendant because Defendant has a principal place of business in Allegheny County at 4091 Circle Drive, Allison Park, PA 151014.

4. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b), (c), and (d) because the Defendant resides in this district.

## THE PARTIES

5.      Plaintiff is the inventor of U.S. Patent No. 10,117,386 and resides at 10599 Free Rd., Conneaut Lake, PA 16316.

6.      Defendant is a West Virginia Corporation having a principal place of business in Allegheny County located at 4091 Circle Drive, Allison Park, PA 15101.

## BACKGROUND

7.      Plaintiff is the owner of United States Patent No. 10,117,386 entitled "Synthetic Turf Removal Skid Steer Attachment Assembly" that issued on November 6, 2018 and contains 13 claims directed to a synthetic turf removal attachment capable of being attached to a skid steer (the "'386 Patent").

8.      Plaintiff manufactures and sells a synthetic turf removal attachment for a skid steer covered by the claims of the '386 Patent.  Plaintiff spent numerous hours and R&D to create an embodiment of Plaintiff's invention.  Plaintiff licenses and uses as part of his family business, Playing Surface Solutions, a synthetic turf removal attachment for a skid steer that is covered by the '386 Patent.  The tool invented by Plaintiff revolutionizes the removal of synthetic turf.  There is no other tool capable of being used with a skid steer.

9.      Prior to Plaintiff's invention, most turf removal projects were performed manually requiring significant manpower (10-12 personnel) and requiring almost an entire week. Existing automated removal equipment is expensive, and, in some cases is difficult to use, has low power and, accordingly, takes several days to accomplish the removal process and typically only has a turf removal machine. Due to the inefficiency and the excessive expense, most removal teams opt to revert to manual removal methods.

10.     Plaintiff's family business, Playing Surface Solutions, and Defendant are direct competitors.

11.     In 2013, Defendant hired Plaintiff to remove a turf field at Swarthmore College.  Astroturf provided Plaintiff's contact information to Defendant as Plaintiff was then removing various fields for Astroturf in the general area.  Swarthmore's field contained an elastic layer (e-layer: bonded rubber shock pad, which contains crumb rubber mixed with a urethane binder).  At the time, Plaintiff was removing all e-layer fields for Astroturf because it was the only company reasonably capable of safely removing and preserving the synthetic turf atop the e-layer. At the time, Defendant was not capable of performing this task, which necessitated hiring Plaintiff. Tim Keane, owner of Defendant, witnessed Plaintiff utilizing the synthetic turf removal attachment in removing Swarthmore's field. Upon information and belief, approximately twelve (12) months later during the next removal season, TPK, Inc. was removing turf fields and possessed a synthetic turf removal attachment for skid steers identical to that created by Plaintiff.

12.     During the Swarthmore College turf removal job, Plaintiff used his synthetic turf removal attachment for a skid steer that is covered by the '386 Patent ("Plaintiff's device").  Defendant was impressed by Plaintiff's device and the time and cost savings that Plaintiff's device created.   Defendant had access to Plaintiff's device and viewed it in action.

13.     Defendant was made aware that the device was patent pending and that Plaintiff had exclusive rights to the invention.

14.     Upon information and belief, Defendant secretly, and without Plaintiff's consent, copied Plaintiff's device and made or had made an identical infringing device.  Defendant did so without regard to Plaintiff's patent rights.  A comparison of the Defendant's machine and the patent drawing are shown below.

 

15.    Upon information and belief, Defendant continues to willfully and blatantly infringe the '386 Patent by using the infringing device on all of Defendant's turf removal jobs.

16.    Defendant was made aware of Plaintiff's issued patent at least as early as January 13, 2019.

17.    Defendant, without regard to the '386 Patent, continues to use the infringing device.

## COUNT I
## (INFRINGEMENT OF THE '386 PATENT)

18.    Plaintiff realleges each and every allegation set forth in Paragraphs 1 through 17 inclusive, and incorporates them herein by this reference.

19.    A true and correct copy of the '386 Patent is attached hereto as Exhibit A.

20.    Upon information and belief, the synthetic turf removal attachment for a skid steer used by the Defendant infringes claims 1-13 of the '386 Patent.

21.    At all times since the date of issue of the '386 Patent, Plaintiff has been and currently is, the exclusive owner of the entire right, title, and interest in and to the '386 Patent. Plaintiff's ownership of the '386 Patent includes, without limitation, the exclusive right to enforce the '386 Patent, the exclusive right to file actions on infringement of the '386 Patent, the exclusive right to recover damages or other monetary amounts for infringement of the '386 Patent, and the exclusive right to be awarded injunctive relief pertaining to the '386 Patent. Plaintiff has owned the '386 patent at all times during Defendant's infringement of the '386 patent.

22.    Neither Defendant nor any of its suppliers or customers have a valid license to make, sell, use, or import products practicing the '386 Patent.

23.    Due to Defendant's infringement of the '386 Patent, Plaintiff has suffered, is suffering, and will continue to suffer irreparable injury for which Plaintiff has no adequate remedy at law. Plaintiff is therefore entitled to an injunction against Defendant's further infringing conduct.

24.    Defendant has profited and is profiting from its infringement of the '386 Patent, and Plaintiff has been and is being damaged and losing profit by such infringement. Plaintiff is therefore entitled to recover damages from Defendant and the total profit derived from such infringement, all in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief as follows:

1.    A judgment that Defendant has infringed and is infringing the '386 Patent;

2.    An order and judgment permanently enjoining Defendant and all persons and entities acting in concert with Defendant, from infringing the '386 Patent;

3.    An order and judgment requiring Defendant to pay Plaintiff the total profit made by Defendant from its infringement of the '386 patent pursuant to 35 U.S.C. § 289 or all damages caused by Defendant's infringement of the '386 Patent (but in no event less than a reasonable royalty) pursuant to 35 U.S.C. § 284;

4.    A judgment and order requiring Defendant to pay Plaintiff increased damages up to three times the amount found or assessed pursuant to 35 U.S.C. § 284;

5.    A determination that this action is an exceptional case pursuant to 35 U.S.C. § 285;

6.      A judgment and an order enjoining Defendant, agents, employees, attorneys, successors, assigns, affiliates, entities owned and controlled by Defendant, and all those in active concert or participation with Defendant, and each of them who receives notice directly or otherwise of such injunction from:

a.      Selling, distributing, manufacturing, importing, offering for sale, advertising, or promoting any product bearing any simulation, reproduction, copy or colorable imitation of such that it is likely to deceive, mislead, or confuse the public into believing that Defendant's products in any way originate with, are sanctioned by, or are affiliated with Plaintiff;

b.      otherwise competing unfairly with Plaintiff in any manner;

c.      instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities alleged in the Complaint;

d.      disposing of, destroying, altering, moving, removing, concealing, tampering with or in any manner secreting any physical evidence or documents (including computer records) of any kind, including invoices, correspondence, books of account, receipts or other documentation relating or referring in any manner to the manufacture, advertising, receipt, acquisition, importation, purchase, sale, offer for sale, and/or distribution of any merchandise infringing the '386 Patent or any simulation, reproduction, counterfeit, copy or colorable imitation thereof;

e.      directing that Defendant make available for review, inspection and copying all books, records (including all hard drives on computers used for business purposes, including servers, as well as all computer disks and back up disks) and other documents and things concerning all transactions relating to the purchase

6

or sale of infringing product or any other products incorporating a simulation, reproduction, counterfeit, copy or colorable imitation of infringing products; and

f.    directing that Defendant recall from all distributors, retailers or other recipients any and all infringing products, direct that Defendant recall from all manufacturers any and all dies and tools used to manufacture the infringing products; and that Defendants shall deliver such goods, tools and dies up to Plaintiff's counsel for destruction at Defendant's cost.

7.    A judgment and order requiring Defendant to pay Plaintiff any profits or supplemental damages from any continuing post-verdict infringement up until entry of final judgment, with an accounting, as needed;

8.    A judgment and an order requiring Defendant to pay Plaintiff pre- judgment and post-judgment interest on any damages or profits awarded;

9.    An award of Plaintiff's attorney's fees for bringing and prosecuting this action;

10.    An award of Plaintiff's costs and expenses incurred in bringing and prosecuting this action;

11.    A judgment and an order directing Defendant file with the Court and serve upon Plaintiff's counsel within thirty (30) days after entry of judgment a report in writing under oath setting forth in detail the manner and form in which  Defendant has complied with the above; and

12.    Such further and additional relief as this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury for all issues triable by a jury.

Respectfully submitted,

**THE WEBB LAW FIRM**

Dated: May 17, 2019

s/ *John C. Thomas III*
John C. Thomas III (PA ID No. 85532)

One Gateway Center
420 Ft. Duquesne Blvd., Suite 1200
Pittsburgh, PA 15222
412.471.8815/412.471.4094 (fax)
jthomas@webblaw.com
litigation@webblaw.com

*Attorneys for Plaintiff Troy Wilson*